John A. **ANDERSON**, Individually and on Behalf of All Other Persons Similarly Situated, Plaintiff-Appellant,

v.

**JOHN MORRELL & COMPANY**, and Members of the Board of Directors of John Morrell & Company, Defendants-Appellees.

No. 86–5017 SD.

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1986.

Decided Sept. 30, 1987.

---

**27.** The renewed or second motions of Deters, Caspersen, Prescott, and Holbrook for release pending appeal are denied.

FAIRCHILD, Senior Circuit Judge.

Plaintiff John A. Anderson appeals on behalf of himself and the members of the class he allegedly represents from the entry of summary judgment in favor of the defendants John Morrell and Company and its Board of Directors (Morrell or the Company). For the reasons set forth below, we modify the judgment so as to affirm it only as to Anderson's individual claim.

## I. FACTS

In essence, Anderson's claim is that he is entitled, as a matter of contract, to have certain health benefits added to the welfare benefit plan which is applicable to him as a retired Morrell employee.

Taken in the light most favorable to Anderson, the facts are as follows:

Anderson was first employed by Morrell in 1929 as a laborer at the Sioux Falls, South Dakota plant. He became plant superintendent in 1959, and remained in that position until promoted to operations manager in 1973. He retired January 1, 1977.

Anderson's affidavit opposing summary judgment asserts:

> When he was hired from the union ranks, he was told that his salary would be based upon his performance, but his fringe benefits would always be as good as, or better than, those he would have received if he would have stayed in a union position.
>
> .... At the time that he [Anderson] or Wear [office manager] hired anyone at John Morrell & Co.'s Sioux Falls plant, the employee was informed of the company policy that nonunion salaried employees' wages were based on their performance, but their fringe benefits would always be as good as, or better than, those provided their union counterparts.

Although Anderson refers to the Company's intention as a "policy," with the arguable connotation that it was subject to change by the choice of the Company, the gist of his present claim is that the oral representations of "policy" amounted to an

Charles L. Dorothy, Sioux Falls, S.D., for plaintiff-appellant.

Stanley R. Block, Chicago, Ill., for defendants-appellees.

Before JOHN R. GIBSON, Circuit Judge, FAIRCHILD, Senior Circuit Judge,[*] and MAGILL, Circuit Judge.

---

[*] The HONORABLE THOMAS E. FAIRCHILD, Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

offered promise, accepted by the employee's performance of work. He argues that a contract resulted, under which, whenever the Company improved benefits in the plan covering retired employees from the bargaining unit, it was obliged to make the same improvement in its plan for other retired employees.

Apparently the Company did make improvements in the plan for bargaining unit employees and prior to 1976 it made corresponding modifications in the plan for other employees. There had been, however, substantial delays (in one instance three years) between the changes in the two plans.

As of September 1, 1976, the Company made a collective bargaining agreement granting additional health benefits to already retired employees who had been in the bargaining unit. These additions, a prescription drug plan and a Medicare Supplement B plan, were not included in the plan for other retirees. Anderson had participated in the negotiations and knew of the additions. He retired January 1, 1977, and was aware then, if not before, that the additional benefits were not included in his plan.

Additions were also made to the plan covering retired bargaining unit employees in 1979 and 1983, but no corresponding changes were made in the plan applicable to Anderson. He brought this action in 1984, more than seven years after he became aware that the plan covering him at the time of retirement did not include the benefits added in 1976 to the other plan.[1]

In 1984, Anderson filed this action in South Dakota state court, alleging that the Company had breached its contractual obligations under state law to a class composed of salaried retirees who retired prior to January 1, 1980, by not providing the additional health benefits. Pursuant to 28 U.S.C. § 1441 (b), Morrell removed the action to the District Court for the District of South Dakota,[2] on the ground that the claim arose under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (ERISA); *i.e.,* plaintiff sought to recover and to clarify rights to future benefits for himself and the proposed class under the terms of an "employee welfare benefit plan," as defined by 29 U.S.C. § 1002(1), and the defendant is engaged in interstate commerce.

Plaintiff later moved to certify the class, stating that joinder was impracticable; there were (unidentified) questions of law or fact common to all members of the class; plaintiff's claims were typical of all members (without explication); plaintiff would fairly and adequately protect and represent the interests of the class; and that the requirements of F.R.Civ.P. 23(b)(1)(A), (b)(2) and (b)(3) were met. This motion was granted on April 29, 1985. On December 2, 1985, plaintiff moved to remand the case to state court, or in the alternative to amend the complaint to plead a cause of action under ERISA.

No notice was given to other class members. Remand was denied.

On December 4, 1985, the district court granted Morrell's motion for summary judgment as to plaintiff and all class members who retired after September 1, 1976. It assumed that the Company had a long-

---

1. Anderson explains that the Company's failure to include the new benefits in his plan was not necessarily a breach of the contract because there had been other occasions when an increase in benefits to bargaining unit employees had not been promptly included in the plans of salaried employees. This practice of delay is at least consistent with the proposition that the "policy" was indeed subject to change by the Company, and not a contract.

   Anderson's reply brief in this court emphasizes the equivocal nature of the Company's statement of policy, as follows:

   As John Anderson's deposition also reveals, the Company had to say on the one hand that there were no guarantees about the future because labor law prohibited fighting unionization with promises of future benefits that would be better if the worker did not unionize, while telling the salaried employee orally that if they [sic] stayed away from the union they could always rest assured that [sic] their fringe benefits would be as good as, or better than, their union counterparts.

2. The Honorable John B. Jones, District Judge, United States District Court, District of South Dakota, Southern Division.

standing policy that salaried employees would receive benefits as good as or better than those of employees represented by the Union, but that this policy was terminated on September 1, 1976, when benefits were increased for bargaining unit but not other retirees. The Company had the right under ERISA to change the policy prior to the employees' retirement, and because plaintiff retired thereafter, he and the members of the class had no contractual rights to benefits provided to bargaining unit but not to other retirees. The district court considered that there might be members of the class who retired prior to September 1, 1976, and deferred dismissal as to them for thirty days, in the event of the appearance of a possible class representative. Final judgment was entered under Rule 54(b), however, as to plaintiff and others who retired after September 1, 1976. Plaintiff now appeals, challenging the removal of the action to the federal court, and the judgment in favor of defendants.

## II. RELEVANT STATE LAW WAS PREEMPTED, PLAINTIFF'S CLAIM IS GOVERNED BY FEDERAL LAW, AND REMOVAL WAS PROPER

Anderson contends that his complaint stated a cause of action under South Dakota common law. Whether or not this is so, 29 U.S.C. § 1144 provides that §§ 1001 to 1145 shall "supersede" state laws (including decisional law) insofar as such laws "relate to" an employee benefit plan of an employer engaged in commerce. The Supreme Court has emphasized the broad sweep of the preemption. *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380 (1985); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); *Pilot Life Ins. Co. v. Dedeaux*, —— U.S. ——, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

■ Anderson would distinguish between an action to recover benefits (or enforce his rights or clarify his rights to future benefits) under the terms of a plan as it exists (in which case state law is clearly preempted and the action is under

§ 1132(a)(1)(B)) and an action to establish his contract right to have other benefits added to the plan (in which case he argues that state law applies). We think his distinction cannot stand, and conclude that principles of common law governing a claimed contract right to have the plan modified clearly "relates to" the plan and that state law in that area is preempted. *Cf. Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208, 1216 (8th Cir.), *cert. denied*, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981) (state law claim of tortious interference with employee benefit plan preempted); *Salomon v. Transamerica Occidental Life Ins. Co.*, 801 F.2d 659, 660 (4th Cir. 1986) (state law claims for breach of contract to pay benefits and estoppel to refuse payment preempted); *Authier v. Ginsberg*, 757 F.2d 796, 800-01 (6th Cir.1985) (state law claim for improper discharge of employee because of conduct prompted by ERISA preempted).

The Supreme Court recently considered an action which had been filed in state court on a state law contract theory and removed to federal court. The complaint sought damages on account of refusal to pay benefits under a benefit plan. Examining the intent of Congress, the Court held that state law actions which are preempted by ERISA are removable to federal court under 28 U.S.C. § 1441(a), even though federal preemption is ordinarily a defense to plaintiff's suit. *Metropolitan Life Insurance Co. v. Taylor*, —— U.S. ——, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *see Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908) ("well-pleaded complaint rule"); *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 2427 n. 2, 69 L.Ed.2d 103 (1981). Therefore removal was proper.

## III. NOTHING IN THE TERMS OF ERISA PREVENTS THE EMPLOYER FROM CHANGING AN EMPLOYEE WELFARE BENEFIT PLAN

■ If the "policy" of keeping the plan for employees outside the bargaining unit

as good as the plan for bargaining unit employees can be treated as a "plan" by itself, the express terms of ERISA do not prevent abandoning the "plan." (Or if treated as part of the "plan" for non-bargaining unit employees, the express terms do not prevent eliminating that part.) Anderson does not suggest the contrary, and we are satisfied that analysis of the "policy" as a "plan" would not help him.

In enacting ERISA, Congress made specific provisions for vesting of rights under pension plans, depending in part on the length of time during which the employee worked. 29 U.S.C. §§ 1051 to 1061. These provisions responded to a primary concern of Congress. *Winer v. Edison Bros. Stores Pension Plan*, 593 F.2d 307, 310 (8th Cir.1979). Employee welfare benefit plans were expressly excluded from these sections (§ 1051(1)), and no other provision restricted cancellation or change in such plans. Welfare plans are subject to the reporting and disclosure requirements of §§ 1021–1031, and the fiduciary responsibility standards of §§ 1101–1114. *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1352 (9th Cir.1984). While plaintiff was not notified in writing of the 1976 change in the "policy," *see* 29 U.S.C. § 1022, Anderson knew that his plan did not contain the new benefits, and he does not argue that ERISA causes a plan to stay in force unmodified until a change is reported and disclosed.

The Supreme Court has held that the Act "does not regulate the substantive content of welfare-benefit plans." *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 732, 105 S.Ct. 2380, 2385, 85 L.Ed.2d 728 (1985).

> The Act was not designed to prohibit modification of these ancillary [non-accrued] benefits. *See* H.R.Conf. R. No. 1280, 93d Cong., 2d Sess. 273, *reprinted in* 1974 U.S.Code Cong. & Ad. News 4639, 5038, 5054; H.R.Rep. No. 807, 93d Cong., 2d Sess. 60–61, *reprinted in* 1974 U.S. Code Cong. & Ad. News 4639, 4670–4726. Rather, Congress believed that the "vesting of these ancillary benefits would seriously complicate the administration and increase the cost of plans whose primary function is to provide re-

tirement income." H.R.Rep. No. 807, 93d Cong., 2d Sess. 60, *reprinted in* 1974 U.S.Code Cong. & Ad. News 4890, 4935.

An employer may change such benefits without violating ERISA.

*Sutton v. Weirton Steel Div. of Nat. Steel Corp.*, 724 F.2d 406, 410 (4th Cir.1983), *cert. denied*, 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984); *Fentron Industries v. Nat. Shopmen Pension Fund*, 674 F.2d 1300, 1306 (9th Cir.1982) ("A pension plan may cancel benefits not required by ERISA's minimum vesting standards.")

Thus, treating the "as good as" policy as a plan or part of a plan, the terms of ERISA do not provide a cause of action against the Company for unilaterally eliminating the policy. *See In Re White Farm Equipment Co.*, 788 F.2d 1186, 1193 (6th Cir.1986) ("Congress expressly exempted employee welfare benefit plans from stringent vesting, participation, and funding requirements. Congress recognized the difference between welfare benefit plans and pension plans, and we discern no basis for finding mandatory vesting in ERISA of retiree welfare benefits.").

## IV. DOES FEDERAL COMMON LAW RECOGNIZE A CONTRACT RIGHT ARISING OUT OF THE ANNOUNCEMENT OF A "POLICY" OF IMPROVING A WELFARE BENEFIT TO CONFORM TO IMPROVEMENTS IN ANOTHER PLAN AND EMPLOYEE'S RENDERING OF SERVICE THEREAFTER?

Anderson argues that if South Dakota law is really preempted

> South Dakota contract law [should] be used as the basis of federal common law of contracts, which would result in the conclusion that Morrell breached its employment contract with Anderson, and those he represents, by not providing them fringe benefits during retirement that were as good as or better than, those provided their union counterparts.

Appellant's Brief, p. 25.

The Sixth Circuit has concluded "that the parties may themselves set out by agree-

ment or by private design, as set out in plan documents, whether retiree welfare benefits vest, or whether they may be terminated." *In Re White Farm Equipment Co.,* 788 F.2d at 1193.

We have previously held that Congress intended that a body of federal substantive law be developed to fill in the gaps left by ERISA's express provisions, in much the same way as the courts have fashioned a federal common law under § 301 of the Labor Management Relations Act of 1947. *Landro v. Glendenning Motorways, Inc.,* 625 F.2d 1344, 1351 (8th Cir.1980).

■ The gist of Anderson's claim is that the employer's oral statement to individual employees of its "policy" became a contract to maintain and improve the plan when the employees thereafter performed service. Yet if that be so, it would equally follow that an employer's announcement of any plan to pay welfare benefits would become a contract to maintain the plan indefinitely upon the performance of service by employees. Congress, however, did not intend that result. Doubtless it is consistent with the intent of Congress for an employer to undertake such an obligation if it elects to do so. We conclude, however, that to accomplish that result, there must be a specific, if not written, expression of the employer's intent to be bound. Such expression is lacking in the Company's statement of its "policy" in this case.

## V. ANDERSON'S CLAIM IS BARRED, AT LEAST IN PART, BY THE STATUTE OF LIMITATIONS

Anderson's claim is that there was a contract binding the Company to add to his plan any benefit it added to the plan for employees represented by the Union. If there was such a contract, the Company repudiated it in 1976 when it added benefits to the plan for retirees from the collective bargaining unit, but did not add them to the plan applicable to Anderson. Anderson became aware of the failure to add the new benefits to his plan no later than the date of his retirement in January 1976.

Anderson brought this action in 1984. Because ERISA contains no statute of limi-

tations, we look to the most appropriate state statute of limitations. *South Carolina v. Catawba Indian Tribe,* 476 U.S. 498, 106 S.Ct. 2039, 2044, 90 L.Ed.2d 490 (1986); *see Byrnes v. Debolt Transfer, Inc.,* 741 F.2d 620, 625 (3rd Cir.1984) (ERISA action). Here that is the law of South Dakota, as all acts complained of occurred there and no other jurisdiction has an interest in the action. *Cf. Jenkins v. Local 705 International Brotherhood of Teamsters,* 713 F.2d 247, 251 (7th Cir.1983) (discussing choice of Illinois law). The parties agree that plaintiff's claim should be characterized as one for breach of contract and thus South Dakota's six-year statute of limitations upon an express or implied contract applies. **S.D. Codified Laws Ann.** § 15–2–13 (1984).

■ It follows that his action was untimely as to any claim which arose in 1976 or 1977.

Anderson contends that the contract continued in force and that there were further breaches within six years of the time he brought his action. Because of our conclusion that there was no contract, we need not consider this contention.

## VI. THE JUDGMENT SHOULD NOT BIND OTHER MEMBERS OF THE PROPOSED CLASS

The order determining that the action would be maintained as a class action did not specify whether it should be so maintained under subdivision (b)(1), (b)(2), or (b)(3) of Rule 23. No notice was given to class members.

Anderson's contract claim was based on a statement to him of an unidentified person, an apparent agent of the Company. The claims of other class members were based on statements allegedly made to them by Anderson in some instances and by Wear in others, each acting as an agent of the Company. No point has been made of any conflict of interest as to Anderson. A fact which probably was peculiar to Anderson was his knowledge, at the time of his retirement, of the new benefits previously granted to retirees who had been

represented by the union and not included in his retirement plan. This knowledge may well have been essential to subject him to the statute of limitations defense previously discussed. The district court apparently considered Anderson an adequate representative of the class, and we do not find that these differences made him inadequate.

■ These differences do, however, militate in favor of deeming this a (b)(3) class action, in which subdivision (c)(2) would require notice to class members.

Under the circumstances, we think the judgment should not bind the class.