Tarra Lynne COONCE, et al., Plaintiffs,

v.

AETNA LIFE INSURANCE
CO., et al., Defendants.

No. 90–0487–CV–W–1.

United States District Court,
W.D. Missouri, W.D.

Nov. 6, 1991.

Timothy Brownlee, Crew, Smart, Whitehead & Waits, Kansas City, Mo., for plaintiffs.

John W. Cowden, Peter F. Travis, and Brian E. Howard, Baker & Sterchi, Kansas City, Mo., for defendant Aetna.

Mark D. Herbert, Sullins, Johnston, Rohrbach & Magers, Houston, Tex., for defendant San Marcos Treatment.

## ORDER

WHIPPLE, District Judge.

Five motions are pending before this court. They are intervenor plaintiff San Marcos Treatment Center's Motion for Partial Summary Judgment, filed May 31, 1991; defendants' Motion for Partial Summary Judgment on the Claims of Plaintiff Tarra Lynne Coonce, filed June 14, 1991; defendants' Motion for Summary Judg-

ment on Intervenor San Marcos Treatment Center's Complaint in Intervention, filed June 14, 1991; intervenor plaintiff San Marcos Treatment Center's Motion for Leave to File First Amended Complaint in Intervention, filed September 4, 1991; and plaintiff Tarra Lynne Coonce's Motion for Leave to File First Amended Complaint, filed October 21, 1991.

For the reasons set forth below, San Marcos Treatment Center's motion for partial summary judgment will be denied, defendants' motion for partial summary judgment on plaintiff Coonce will be granted, defendants' motion for summary judgment on San Marcos Treatment Center will be granted in part and denied in part, San Marcos Treatment Center's motion to file its First Amended Complaint will be granted in part and denied in part, and plaintiff Tarra Lynne Coonce's motion to file her First Amended Complaint will be denied.

## I. BACKGROUND

This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Plaintiff Tarra Lynne Coonce ("Tarra") challenges the decision of defendants Trustees of Sickness and Accident Fund Local 235 GCIU ("Trustees") and Aetna Life Insurance Co. ("Aetna"), denying a claim for medical benefits under a group health insurance plan.

Since 1978, Tarra has been employed by TransAmerica Color Systems, Inc. As a benefit of her employment, Tarra is insured as a participant under a group health care plan. Tarra's minor daughter, Tina Marie Coonce ("Tina"), is also an insured participant under the plan. The plan is administered by the Trustees. The Trustees are responsible for making initial determinations regarding what level of benefits a participant is entitled to under the plan. Aetna is an agent of the Trustees with respect to the plan. Aetna is responsible for making final determinations regarding what level of benefits a participant is enti-

tled to, as well as processing and paying claims submitted thereunder. The insurance plan is subject to the requirements of ERISA.

Prior to 1985, Tarra's daughter Tina began receiving psychiatric treatment on an out-patient basis. She subsequently received in-patient treatment. Prior to June of 1986, plan participants were reimbursed in full for in-patient treatment of "mental and nervous disorders" up to a lifetime cap of $1 million. In June of 1986, the Trustees amended the plan benefits, reducing reimbursement for in-patient mental health care to eighty percent. Notice of the change was provided to plan participants. Tarra received notice of the change in coverage sometime during 1986. Dep. of Tarra Lynne Coonce at 25. In July of 1989, the Trustees again amended the benefits for mental health coverage by reducing the lifetime cap from $1 million to $80,000.00. Additionally, the Trustees put a limit on the number of days a plan participant could be confined for mental health care on an annual basis. Before the amendment, there was no limit on the number of days per confinement. The only limitation was that the confinement had to be approved (pre-certified) by Aetna prior to admission. After July 1, 1989, plan participants were limited to thirty days in-patient treatment in any one calendar year. Pre-certification remained a requirement.

In the spring of 1989, Tina was receiving in-patient care at a facility located in Kansas City, Missouri. In May of that year, Tarra sought to transfer Tina to plaintiff San Marcos Treatment Center ("San Marcos"),[1] a facility located in San Marcos, Texas. Between the months of May and July of 1989, in a series of telephone conversations participated in by representatives of San Marcos, Aetna, and the Trustees (union), the parties sought to determine what level of coverage Tina would be entitled to in light of the scheduled changes in

---

1. Plaintiff San Marcos initially entered this suit as an intervenor party. During the pendency of these motions, San Marcos sought leave to rea-

lign itself as a party plaintiff. The court granted San Marcos leave to realign itself as a party plaintiff. *See Order of September 17, 1991.*

plan benefits.[2] Specifically, the parties sought to determine whether the reduction in the lifetime cap and the limit on the number of days per confinement would apply to Tina, given that she would be receiving treatment for an ongoing condition. Dep. of Barbara Manzullo at 283; Dep. of Beth Cathcart at 73–74.

Sometime during the month of June, Aetna representative Barbara Manzullo ("Manzullo") advised San Marcos representative Beth Cathcart ("Cathcart") that Aetna would pre-certify a two-week stay at San Marcos. Dep. of Manzullo at 135. However, a question remained as to whether there would be a limitation on the number of days Tina could be confined for treatment.[3] On July 18, 1989, Cathcart was advised by Manzullo that Tina's confinement would be conditioned solely on obtaining the necessary pre-certification and that no day limit would be imposed. Pre-certification would be contingent upon a finding of "medical necessity." Dep. of Cathcart at 82; Dep. of Manzullo at 261–62.

On the same day Cathcart received this information from Manzullo, she completed a San Marcos Benefit Certification form to confirm all the oral representations which had been made to her regarding Tina's insurance coverage. Where the form asked for information regarding the time limit on coverage, Cathcart typed "per certification." Where the form asked for information regarding the dollar limit on coverage, Cathcart typed "one million."[4] Cathcart sent the form by certified mail to the union. Dep. of Cathcart at 86–87. She sent the form to the union's office because she had been advised that bills and verification of insurance matters should be routed to that office. *Id.* The union received the benefits verification form; it did not forward a copy of the form to Aetna. *Id.* The form was not returned to San Marcos.

On July 24, 1989, Tina was admitted to San Marcos for treatment. On the same day of her admission, Tarra assigned her interest in insurance benefits to San Marcos. The assignment form, which was provided by San Marcos, stated:

> Acceptance of third party Insurance Carrier benefits by The San Marcos Treatment Center for partial or full payment of the hospital charges incurred by patients of The San Marcos Treatment Center is contingent upon the assignment of benefits to the hospital by the policy owner/holder.
>
> Assignment means that benefits which are available under the policy will be paid directly to The San Marcos Treatment Center.
>
> . . . .
>
> I hereby assign, transfer and set over to The San Marcos Treatment Center, as its interest may appear under my insurance policy, out of any such benefits that I may be due.

After Tina completed her two-week stay at San Marcos, Aetna refused to certify any additional days of confinement. Despite Aetna's decision not to approve any additional days, Tina remained at San Marcos until her release in November of 1990.

This suit was filed on May 25, 1990, following exhaustion of the internal appeals process. In her six-count petition, Tarra raises the following claims: 1) Count

---

**2.** Tarra also participated in some of these discussions.

**3.** The confusion as to the number of days was complicated by the fact that Cathcart had been incorrectly advised at the outset that the current benefit level of coverage (pre-July 1, 1989) included a 365–day per confinement limit.

**4.** In addition to setting forth what benefits were available to a prospective patient, the form included a place for the recipient to indicate whether there were any discrepancies in the coverage limits as stated therein. It provided:
> We require written verification of benefits and advisement of any exclusions and limitations other than those indicated above. It is hereby agreed that the subject patient's complete confinement at the San Marcos Treatment Center will be paid according to the benefits stated above. Please complete and sign the certification below, return at your earliest convenience. *IF THIS DOCUMENT IS NOT RETURNED TO US WITHIN 20 CALENDAR DAYS OF THE DATE SHOWN ABOVE, WE WILL RESUME THAT ALL INFORMATION CONTAINED HEREIN IS CORRECT.*
(Emphasis and bold type included in original text).

I: claim for civil enforcement under 29 U.S.C. § 1132(a)(1)(B); 2) Count II: claim for breach of fiduciary duty by the Trustees for their decision in June of 1986 to reduce the level of reimbursement from 100% to 80% for in-patient care after it had "accrued, vested and attached"; 3) Count III: claim for vexatious refusal to pay under Mo.Rev.Stat. § 375.420; 4) Count IV: claim for breach of contract; 5) Count V: claim for breach of contract arising from certain oral representations made by Aetna to San Marcos regarding what coverage Tina had under the plan; and 6) Count VI: claim for breach of fiduciary duty by Aetna for refusing to reimburse, on a 100% basis, claims for in-patient care submitted after June 1986.

In September of 1990, San Marcos sought leave of court to intervene as a party in the present action. The court granted San Marcos leave to intervene on December 11, 1990. In its six-count petition, San Marcos raises the following claims: 1) Count I: various claims under the Texas Deceptive Trade Practices–Consumer Protection Act and Insurance Code (statutory claims for misrepresentation); 2) Count II: claim for breach of contract; 3) Count III: claim for breach of the duty of good faith and fair dealing; 4) Count IV: claim for negligent misrepresentation; 5) Count V: claim for equitable estoppel; and 6) Count VI: claim for civil enforcement under 29 U.S.C. § 1132(a)(1)(B).

## II. DISCUSSION

### A. *Standard of Review*

A movant is entitled to summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

The moving party bears the burden of proof. *Aetna Life Ins. Co. v. Great Nat'l Corp.*, 818 F.2d 19, 20 (8th Cir.1987). When considering a motion for summary judgment, the court must scrutinize the

evidence in the light most favorable to the non-moving party, according the non-moving party the benefit of every factual inference and resolving all doubts as to the facts or existence of any material fact against the moving party. *United States v. Conservation Chemical Co.*, 619 F.Supp. 162, 179–80 (W.D.Mo.1985). If the moving party meets this requirement, the burden shifts to the non-moving party who must set forth *specific* facts showing that there is a genuine issue for trial to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986).

### B. *Defendants' Motion for Partial Summary Judgment Against Plaintiff Coonce*

In their motion, defendants seeks entry of summary judgment on all counts except Count I of plaintiff's Complaint. The court separately shall address the arguments raised on each of the challenged counts.

#### (1) Count II (Breach of fiduciary duty)

■ Defendants argue that they are entitled to summary judgment on Count II of plaintiff's Complaint because the cause of action is barred by ERISA's three-year statute of limitations for breach of fiduciary duty claims. 29 U.S.C. § 1113(2). The court finds that defendants are entitled to summary judgment on Count II without reaching defendants' argument that the claim is time barred. Rather, the court finds that defendants are entitled to summary judgment on Count II because plaintiff fails to state a claim upon which relief may be granted.

Plaintiff bases her claim for breach on the theory that she acquired a "vested, accrued" interest in receiving a certain level of benefits under the plan—in this instance, 100% reimbursement for in-patient mental health care. The court, however, is hard pressed to find any support for the theory that an employee has vested rights in benefits provided under a group health insurance plan. ERISA recognizes two forms of employee benefit plans: pension benefit plans and welfare benefit plans. A

group health insurance plan is a welfare benefit plan. *See* 29 U.S.C. § 1002(1)(A). ERISA imposes stiff requirements regarding the vesting, participation, and funding of pension benefit plans. *See* 29 U.S.C. §§ 1051–1060, 1081–1085. To the contrary, the statute expressly preempts welfare benefit plans from these requirements. *See* 29 U.S.C. § 1051(1). Consequently, courts have concluded that welfare benefit plan participants acquire *no* vested rights in those benefits. *Reichelt v. Emhart Corp.*, 921 F.2d 425, 430 (2d Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2854, 115 L.Ed.2d 1022 (1991); *Alday v. Container Corp. of America*, 906 F.2d 660, 663 (11th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 675, 112 L.Ed.2d 668 (1991); *Howe v. Varity Corp.*, 896 F.2d 1107, 1109 (8th Cir.1990); *Musto v. American Gen. Corp.*, 861 F.2d 897, 901 & n. 2 (6th Cir.1988), *cert. denied*, 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989); *Sutton v. Weirton Steel Div. of Nat'l Steel Corp.*, 724 F.2d 406, 410 (4th Cir.1983), *cert. denied*, 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984). That being so, the only issue before a court is whether the plan administrator retained the right to amend or terminate the plan. *Howe*, 896 F.2d at 1109; *see also McGann v. H & H Music Co.*, 742 F.Supp. 392 (S.D.Tex.1990).

■ In the present matter, the Trustees retained the right to change or discontinue the plan in its entirety. While plaintiff attempts to argue that there is a genuine issue of fact with respect to the sufficiency of the notice (detailing the June 1986 change in benefits), the court declines to address this argument for two reasons: plaintiff does not raise this argument in her Complaint, and plaintiff's claim would be time barred under 29 U.S.C. § 1113(2). Therefore, summary judgment shall be entered for defendants on Count II.

(2) Count III (Vexatious refusal to pay)

Defendants argue they are entitled to summary judgment on Count III as a matter of law for two reasons: 1) ERISA expressly preempts claims arising under state law, 29 U.S.C. § 1144(a); and 2) the Eighth Circuit has determined that Missouri's vexatious refusal to pay statute, Mo.Rev.Stat. § 375.420, is not saved from preemption under § 1144(b)(2)(A) as being a law "which regulates insurance." *In re Life Ins. Co. of North America*, 857 F.2d 1190, 1194 (8th Cir.1988). The court of appeals' decision in *In re Life Ins.* is dispositive of this matter. Therefore, summary judgment shall be entered for defendants on Count III as a matter of law.

(3) Count IV (Breach of contract)

■ Defendants argue that they are entitled to summary judgment on Count IV because it is likewise preempted by 29 U.S.C. § 1144(a). Plaintiff, in response, argues that her breach of contract claim "is grounded in ERISA and its progeny and is not preempted by ERISA." Plaintiff provides no support or guidance for this statement. Therefore, the court shall enter summary judgment for defendants on Count IV of plaintiff's Complaint.

(4) Count V (Breach of contract)

■ Defendants argue that they are entitled to summary judgment on Count V on several grounds: 1) the claim is preempted by 29 U.S.C. § 1144(a); 2) plaintiff is not the real party in interest because she assigned her right to benefits under the plan to San Marcos; and 3) plaintiff is not the real party in interest as a third party beneficiary of an alleged oral contract.

While acknowledging that the assignment affects that portion of benefits "which may be due and owing to San Marcos," plaintiff contends that she is a real party in interest to the extent she remains liable for payment. Additionally, plaintiff argues that there is an issue of material fact regarding the validity of the assignment. Plaintiff did not obtain the required consent of Aetna prior to executing the assignment in favor of San Marcos.

■ Based on the plain language of the assignment, it is clear that plaintiff absolutely and unconditionally assigned her interest in benefits due and owing to San Marcos. The only injury plaintiff alleges under Count V arises from the very interest she assigned to San Marcos on July 24,

1989. Plaintiff's liability for twenty percent of Tina's in-patient care is not implicated in the claim raised under Count V. Therefore, this court concludes that defendants are entitled to summary judgment on the grounds that plaintiff is not the real party interest, having assigned her interest in benefits to San Marcos.[5]

### (5) Count VI (Breach of fiduciary duty)

Defendant, relying on the same argument they raised with respect to Count II, contend they are entitled to summary judgment because the claim is time barred. 29 U.S.C. § 1113(2). The court shall enter summary judgment for defendants on Count VI for the same reasons it stated summary judgment should be granted on Count II.

### (6) Count I (§ 1132(a)(1)(B) action)

Although defendants have not requested that summary judgment be entered on their behalf under Count I, the court, in light of its rationale for granting summary judgment on Counts II and V, *sua sponte* shall enter summary judgment on Count I for defendants. Therefore, defendants' motion seeking partial summary judgment shall be granted as a motion for summary judgment.

### C. *Cross Motions for Summary Judgment*

San Marcos and defendants Trustees and Aetna have filed cross motions for summary judgment against each other. San Marcos, in its motion for partial summary judgment, requests that the court grant summary judgment on all of the affirmative defenses defendants raise that are premised on "ERISA preemption."[6] San Marcos relies on Texas and Fifth Circuit case law for its support. Defendants, in their motion for summary judgment, request that the court grant summary judgment on San Marcos' six-count petition on the grounds that ERISA preempts Counts I, II, III, IV, and V, and that San Marcos lacks standing under Count VI. Alternatively, defendants argue that Counts I and IV should be barred because San Marcos did not detrimentally rely on the alleged representations. Because of the overlapping nature of the issues raised, the court shall consider the merits of the two motions jointly.

### (1) Counts I and IV

### (Texas state law claims and negligent misrepresentation)

In Count I of its complaint, San Marcos raises claims under the Texas Insurance Code and Deceptive Trade Practices–Consumer Protection Act (codification of common law action for misrepresentation).[7] The claims arise from alleged representations defendants made to San Marcos regarding the level of coverage Tina was entitled to after July 1, 1989. San Marcos raises an analogous common law claim for negligent misrepresentation in Count IV of its Complaint. Defendants argue they are entitled to summary judgment on Counts I and IV because ERISA preempts claims arising under state law. 29 U.S.C. § 1144(a).[8] Alternatively, defendants ar-

---

5. The court finds plaintiff's argument regarding the validity of the assignment moot. By their own actions, defendants have verified plaintiff's assignment. See infra discussion under C.(4).

6. The affirmative defenses challenged: 1) attorney's fees are barred (29 U.S.C. § 1132); 2) action is barred by ERISA's statute of limitations (29 U.S.C. § 1113); 3) claims are barred by the business judgment doctrine; 4) claims are preempted (29 U.S.C. § 1144(a)); 5) claims are barred by lack of specific intent to violate ERISA; 6) claims are barred because San Marcos has failed to exhaust all available administrative remedies; and 7) claims are barred because defendants did not act arbitrarily and capriciously.

7. Tex.Ins.Code Ann. art. 21.21 §§ 4(1), 16; Tex. Bus. & Com.Code Ann. §§ 17.46(b)(2), (5), (7), (12). San Marcos also asserts claims under Texas State Board of Insurance Official Order No. 41454, Rule 059.21.26.003(15) (refusal to pay claim); Official Order No. 41060, Rule 059.-50.01.003(a), (b); Official Order No. 18663, and Rule 059.50.01.004 (misrepresentation of policy terms and deceptive claims practices).

8. Section 1144(a) provides:

 Except as provided in subsection (b) of this section [savings clause], the provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan
 ....

gue that Counts I and IV should fail because San Marcos did not rely to its detriment upon any representations defendants made.

■ San Marcos responds that summary judgment is not appropriate because the Fifth Circuit determined in *Memorial Hospital System v. Northbrook Life Insurance, Co.*, 904 F.2d 236 (5th Cir.1990), that claims arising under article 21.21 of the Texas Insurance Code are not preempted because they do not "relate to" an ERISA plan. San Marcos urges the court that the laws of Texas, as well as Texas and Fifth Circuit case law, should govern the question of whether its statutory and common law claims for misrepresentation are preempted by ERISA. San Marcos is correct in stating that its claims for misrepresentation arise under Texas law. *See* Restatement (Second) of Conflicts of Law § 148(2) cmt. j. However, San Marcos is incorrect in stating that this court is obliged to follow Fifth Circuit precedent when considering a matter arising under federal law. Rather, this court is obliged to follow Eighth Circuit precedent when considering a matter arising under federal law. *Zuniga v. United Can Co.*, 812 F.2d 443, 450 (9th Cir.1987).

■ The Eighth Circuit, albeit briefly, has looked at the force and effect of ERISA's preemption clause. *Baxter By & Through Baxter v. Lynn*, 886 F.2d 182 (8th Cir.1989); *Anderson v. John Morrell & Co.*, 830 F.2d 872 (8th Cir.1987). In *Baxter*, the court of appeals stated at the outset that the United States Supreme Court, starting with its decision in *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), has "affirmed the broad preemptive scope of ERISA." *Baxter*, 886 F.2d at 184–85; *see also Anderson*, 830 F.2d at 875. The court of appeals then went on to say that whether a claim is preempted involves a determination of whether the state (or common) law "relates to" an employee benefit plan.

Such a relationship exists when the state law in question "has a connection with or reference to" an employee benefit plan. This phrase is not to be limited to those state laws which deal specifically with ERISA plans or with subject matters covered by ERISA plans. Thus, any provision of state law which conflicts with a proper provision of an ERISA plan must give way to the latter.

*Baxter*, 886 F.2d at 185 (citations omitted). *See also Ingersoll–Rand Co. v. McClendon*, 498 U.S. ——, ——, 111 S.Ct. 478, 483, 112 L.Ed.2d 474, 485 (1990) (Court held that a Texas state law, which created a cause of action for an employee discharged by an employer seeking to avoid payment of employee benefits, is preempted because the existence of the plan is a "critical factor in establishing liability.... [T]his cause of action relates not merely to pension benefits, but to the essence of the pension *plan* itself." (emphasis in original)).

The court of appeals' decision in *Anderson* further illuminates the Eighth Circuit's construction of § 1144(a). In *Anderson*, the plaintiff filed suit for breach of contract, contending that his employer failed to comply with the company's oral "policy" that nonunion salaried employees would always receive fringe benefits as good as—or better than—those provided to unionized employees. *Anderson*, 830 F.2d at 873–74. The plaintiff, arguing against the view that his breach of contract claim was preempted, stated that his cause of action was not one to recover benefits under the plan but "an action to establish his contract right to have other benefits added to the plan." *Id.* at 875. The court, however, disagreed. "We think [plaintiff's] distinction cannot stand, and conclude that principles of common law governing a claimed contract right to have the plan *modified* clearly 'relates to' the plan and that state law in that area is preempted." *Id.* (emphasis added).

This court finds *Anderson* dispositive of the question now being considered. Like

---

(Emphasis added). State law is broadly defined under the statute. It includes "all laws, decisions, rules, regulations, or other State action

having the effect of law, of any State." 29 U.S.C. § 1144(c)(1).

*Anderson,* the oral representations *modify* the terms of the group health insurance plan. This is not a case where the health care provider simply called the plan administer to verify that a prospective patient had coverage, as was the case in *Memorial Hospital.* Rather, this case involves a series of discussions that took place for the express purpose of determining whether Tina would continue to receive benefits based on pre-July 1989 limits. Taken in their entirety, the representations defendants are alleged to have made would have modified the plan by allowing Tina to receive benefits which were no longer available to plan participants after July 1, 1989.

This result is consistent with the Fifth Circuit's analysis of § 1144(a) in *Memorial Hospital.* Therein, the court acknowledged that ERISA preempts state law claims that have the "effect of orally *modifying* the express terms of an ERISA plan." *Memorial Hospital,* 904 F.2d at 245 (emphasis added). The court concluded that plaintiff, a health care provider, was not barred from bringing an action under article 21.21 of the Texas Insurance Code based in part[9] on the following rationale:

> If a patient is not covered under an insurance policy, despite the insurance company's assurances to the contrary, a provider's subsequent civil recovery against the insurer in no way expands the rights of the patient to receive benefits under the terms of the health care plan.... *A provider's state law action under these circumstances would not arise due to the patient's coverage un-*

*der an ERISA plan, but precisely because there is no ERISA plan coverage. Id.* at 246 (emphasis added). In *Memorial Hospital,* the plan participant was without coverage because she sought treatment for an excluded pre-existing condition. *See also Hospice of Metro Denver, Inc. v. Group Health Ins. of Oklahoma, Inc.,* 944 F.2d 752 (10th Cir.1991) (relying on *Memorial Hospital* for the proposition that a common law claim for promissory estoppel does not "relate to" a plan because it does not seek to enforce or modify the terms of a plan where there is no available coverage in the first instance).

Therefore, the court must conclude that San Marcos' statutory and common law claims for misrepresentation are preempted by § 1144(a) because they "relate to" an ERISA plan. San Marcos' remaining claims under Count I also are preempted, pursuant to the Fifth Circuit's decision in *Ramirez v. Inter–Continental Hotels,* 890 F.2d 760, 762–63 (5th Cir.1989). Summary judgment shall be granted in favor of defendants on Counts I and IV of San Marcos' Complaint.

### (2) Counts II and III

### (Breach of contract, breach of duty of good faith and fair dealing)

Defendants argue they are entitled to summary judgment on Counts II and III because they involve claims for improperly processing a claim for benefits. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *see also Ramirez,* 890 F.2d at 762–63. *Pilot Life* is dispositive of this matter. Therefore, summary judgment shall be entered on behalf

---

**9.** The Fifth Circuit also rested its decision on the fact that plaintiff had no standing to bring an action for civil enforcement under § 1132(a)(1)(B). Although the Fifth Circuit earlier held in *Hermann Hospital v. MEBA Medical & Benefits Plan,* 845 F.2d 1286 (5th Cir.1988), that a health care provider's state law claims (breach of fiduciary duty, negligence, equitable estoppel, breach of contract, and fraud) were preempted by ERISA, it suggested that *MEBA Medical* was factually distinguishable from the present case and that the Supreme Court's decision in *Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), released after *MEBA Medi-*

*cal,* "places a different light on state law actions brought by non-ERISA entities against an ERISA plan or fiduciary." *Memorial Hospital,* 904 F.2d at 250 n. 20. To date, the Supreme Court has not been asked to decide what remedies are available to a health care provider who has been given incorrect information regarding insurance coverage. With all due respect to the Fifth Circuit, this court suggests that the court of appeals' reliance on *Mackey* is misplaced. This court shall not consider whether parties who do not have standing to sue under § 1132 should be entitled to remedies that would be preempted under § 1144(a).

of defendants on Counts II and III of San Marcos' Complaint.

### (3) Count V (Equitable estoppel)

 Defendants argue that they are also entitled to summary judgment on Count IV because a claim for equitable estoppel "relates to" the plan and, therefore, is preempted. The courts have split on the question of whether a claim for equitable—or promissory—estoppel may be raised under ERISA. A majority of the courts have dealt with this question by examining whether a federal common law claim for estoppel should be fashioned. *See, e.g., Armistead v. Vernitron Corp.*, 944 F.2d 1287 (6th Cir.1991); *Black v. TIC Inv. Corp.*, 900 F.2d 112, 114–115 (7th Cir.1990); *Degan v. Ford Motor Co.*, 869 F.2d 889, 895 (5th Cir.1989); *Nachwalter v. Christie*, 805 F.2d 956, 959–61 (11th Cir.1986); *Holland v. Burlington Industries, Inc.*, 772 F.2d 1140, 1147 n. 5 (4th Cir.1985), *affirmed without opinion*, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 559 (1986); *Landro v. Glendenning Motorways, Inc.*, 625 F.2d 1344, 1351 (8th Cir.1980); *see contra Hospice of Metro Denver, Inc. v. Group Health Ins. of Oklahoma*, 944 F.2d 752 (10th Cir.1991) (recognizing a state law claim for promissory estoppel on behalf of a health care provider); *Duerr v. Delco Products*, 911 F.2d 732 (6th Cir.1990) (unpublished opinion) (recognizing a state law claim for promissory estoppel on behalf of an individual who was not a participant under the ERISA plan). While this court acknowledges that San Marcos has not characterized its claim for equitable estoppel as one arising under federal common law, the court shall determine *sua sponte* whether the facts in this case warrant recognition of a federal common law claim for equitable estoppel.

On two occasions the Court of Appeals for the Eighth Circuit has lent its support to the proposition that Congress intended the courts to create a body of federal common law to enforce ERISA's provisions. *Anderson*, 830 F.2d at 877; *Landro*, 625 F.2d at 1351. In *Landro*, the first case to address this matter, the court of appeals explained its support for the creation of a body of federal common law:

> The legislative history of the Act demonstrates that in order to fill the gaps left by ERISA's express provisions, Congress "intended that a body of Federal substantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans," 120 Cong.Rec. 29942 (1974) (remarks of Senator Javits), in much the same way as the federal courts have long fashioned federal common law under section 301 of the Labor Management Relations Act of 1974. We might, therefore, seek to discern and apply "federal" principles in the decision of this case.

*Id.* at 1351 (citations omitted). The Eighth Circuit later restated this view in *Anderson*.

Notwithstanding its remarks, the Eighth Circuit has yet to fashion a remedy for estoppel under federal common law in ERISA cases. In *Landro*, the court of appeals determined that the acts giving rise to the plaintiff's claim for promissory estoppel occurred prior to the enactment of ERISA. Therefore, the case was resolved under state law. *Id.* at 1352. In *Anderson*, the court of appeals refused to recognize a federal common law right of action to enforce the terms of an alleged oral contract, because it did not believe the employer intended to be bound by its so-called company "policy":

> The gist of Anderson's claim is that the employer's oral statement to individual employees of its "policy" became a contract to maintain and improve the plan. . . . Doubtless it is consistent with the intent of Congress for an employer to undertake such an obligation if it elects to do so. We conclude, however, that to accomplish that result, *there must be a specific, if not written, expression of the employer's intent to be bound. Such expression is lacking in the Company's statement of its "policy" in this case.*

*Anderson*, 830 F.2d at 877 (emphasis added). Although the Eighth Circuit to date

has not seen fit to recognize a federal common law right of action in ERISA cases, these decisions suggest that the court would be willing to fashion a federal common law action for equitable estoppel under certain circumstances. This court suggests that the Eighth Circuit would be willing to recognize a claim for estoppel where an employer (or plan administrator) has expressed a "specific" intent to be bound by either an oral or written modification of the plan.

Other federal courts of appeal have explored at length the appropriateness of expanding ERISA's express remedies. The Court of Appeals for the Eleventh Circuit, in *Nachwalter v. Christie*, 805 F.2d 956 (11th Cir.1986), was one of the first circuits to address this issue at length. In *Nachwalter*, the court was asked to employ the doctrine of estoppel to enforce an oral agreement that had the effect of modifying the written terms of an employee pension plan. The court of appeals declined to do so. In support of its decision, the court of appeals articulated three reasons for refusing to adopt the federal common law doctrine of estoppel in ERISA cases: 1) ERISA requires that employee benefit plans are "established and maintained pursuant to a written instrument," 29 U.S.C. § 1102(a)(1); 2) ERISA further requires that an employee benefit plan "provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan," 29 U.S.C. § 1102(b)(3); and 3) ERISA's purpose of protecting employee benefit plan interests would be undermined because employees "would be unable to rely on these plans if their expected retirement benefits could be radically affected by funds dispersed to other employees pursuant to oral agreements." *Id.* at 960.

The Eleventh Circuit has reaffirmed its decision in *Nachwalter* on several occasions. *See, e.g., National Companies Health Benefit Plan v. St. Joseph's Hosp. of Atlanta, Inc.*, 929 F.2d 1558 (11th Cir. 1991); *Alday v. Container Corp. of America*, 906 F.2d 660 (11th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 675, 112 L.Ed.2d 668 (1991); *Kane v. Aetna Life Ins.*, 893 F.2d 1283 (11th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990). Nevertheless, in *Kane*, the court of appeals agreed to recognize a claim for equitable estoppel under federal common law to enforce oral *interpretations* of an employee benefit plan. *Id.* at 1285. *Kane* involved an action to enforce an oral interpretation of an ambiguous clause in the plaintiff's group health insurance plan. The court of appeals explained that the holding in *Kane* was consistent with *Nachwalter:* "[T]he use of the law of equitable estoppel to enforce oral interpretations of employee benefit plans will not affect the ability of employees and beneficiaries to rely on the written terms of such plans." *Id.* at 1286.

The majority of courts which have followed *Nachwalter* have relied on the writing requirement and the concern for actuarial soundness in pension plans (the third reason indicated by the *Nachwalter* court). *See, e.g., Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1163–64 (3d Cir.1990) (reliance on writing requirement); *Degan v. Ford Motor Co.*, 869 F.2d 889 (5th Cir. 1989) (reliance on both writing requirement and actuarial soundness); *Straub v. Western Union Tel. Co.*, 851 F.2d 1262, 1265–66 (10th Cir.1988) (writing requirement); *Cleary v. Graphic Communications Int'l Union Supplemental Retirement & Disability Fund*, 841 F.2d 444, 447–448 (1st Cir.1988) (actuarial soundness).

Two circuits, however, have refused to apply *Nachwalter's* reasoning when the case involves benefits under a welfare benefit plan. The Seventh Circuit in *Black v. TIC Investment Corp.*, 900 F.2d 112 (7th Cir.1990) (holding limited to claims for benefits under unfunded single-employer welfare benefit plans), and the Sixth Circuit in *Armistead v. Vernitron Corp.*, 944 F.2d 1287 (6th Cir.1991) (relying on *Black*), held that federal common law estoppel principles are applicable to claims for benefits under employer welfare plans because concerns about actuarial soundness are absent. In the case of a welfare plan (ie., health insurance policy), the Sixth Circuit explained:

Typically the employer pays policy premiums out of its own assets, perhaps with a contribution from the employee. The actuarial soundness of a fund, which might be depleted if strict vesting and accrual requirements were not observed, is not an issue where a plan of this description is involved. We conclude therefore that in such a case, the purpose of Congress in enacting 29 U.S.C. § 1102(a) [the writing requirement] would not be frustrated by recourse to estoppel principles, which are generally applicable to all legal actions.

*Id.* at 1300. *See also, Black,* 900 F.2d at 115 ("In cases such as these where there is no danger that others associated with the Plan can be hurt, there is no good reason to breach the general rule that misrepresentations can give rise to an estoppel.").

Like the plans at issue in *Black* and *Armistead,* the present case involves a claim for benefits under an employee welfare plan. The alleged oral representations San Marcos seeks to enforce would modify the terms of the written plan. However, the nature of these oral statements differ in kind from the type of representations often involved in these cases. This is not an instance where someone misrepresented that an employee had coverage when he did not or assured an employee that certain welfare benefits would never be amended or terminated, contrary to the express terms of the plan. Here, the issue is whether Tina was entitled to maintain pre-July 1989 benefits on the grounds that the mental disorder she was receiving treatment for pre-existed the change in benefits. In some respects, this case is akin to *Kane* in that the oral representations San Marcos seeks to enforce appear to have been made pursuant to an interpretation of the plan's provisions.[10]

Based on this court's analysis of Eighth Circuit case law, the court finds that the present circumstances warrant finding a federal common law claim for equitable estoppel. The oral representations made were neither flippant nor gratuitous in character. They were made by persons with the apparent authority to make such representations. Furthermore, the statements were made over a period of several months and during the course of several telephone conversations. Based on these circumstances, the court believes that there is sufficient evidence to suggest that defendants expressed a "specific" intent to be bound by these oral representations. Thus, the fact that defendants did not draft a formal written amendment to the plan should not be grounds for denying San Marcos' claim for equitable estoppel. Congress inserted the writing requirement in ERISA "in order that every employee may, on examining the plan documents, determine exactly what his rights and obligations are under the plan." H.R.Conf. Rep. No. 1280, 93d Cong., 2d Sess. 297 (1974), *reprinted in* 1974 U.S.Code Cong. & Admin.News, 4639, 5038, 5077–78. When a written plan fails to adequately inform a participant of his rights—due to an omission or an ambiguity—blind application of this rule will only serve to defeat the very purpose it was meant to further.

 Having established that San Marcos may proceed with its claim for equitable estoppel under federal common law, the court must qualify its finding. Because Aetna did not agree at the outset to reimburse, carte blanche, the treatment San Marcos sought to provide Tina, San Marcos has incurred no injury under a theory of detrimental reliance. Before San Marcos can raise its claim for estoppel, it must first establish that Aetna erred in denying further benefits under the plan.[11] Once it has been established that benefits were improperly denied, questions as to

---

10. Because the court has not seen the actual insurance contract, it can only speculate as to why defendants had reason to question whether the plan's new level of benefits applied to Tina's pre-existing condition. The court has reviewed the insurance booklet that was in effect at the time. The insurance booklet does not provide any information addressing this matter.

11. The parties have not yet advised the court as to what standard of review—"arbitrary and capricious" or "de novo"—they believe the court should apply in relation to San Marcos' civil enforcement action.

what level of benefits Tina was entitled shall be ripe for the court's consideration—along with San Marcos' claim for equitable estoppel.[12]

### (4) Count VI (§ 1132(a)(1)(B) action)

■ Finally, defendants argue that they are entitled to summary judgment on Count VI because San Marcos does not have standing to bring an enforcement action under § 1132(a)(1)(B). As noted earlier, Tarra executed an assignment of benefits to San Marcos. Although Tarra failed to obtain the required consent prior to executing the assignment, defendants, by their own actions, have waived the right to contest the validity of the assignment. Not only did Aetna make direct payment of benefits to San Marcos, it permitted San Marcos to participate in the administrative appeals process. Defendants do not dispute these statements, nor do they offer any argument in the way of rebuttal. Accordingly, the court finds that the assignment of benefits is valid and shall permit San Marcos to proceed with its § 1132(a)(1)(B) action. Defendants request for summary judgment on Count VI is denied.

### (5) Request to Strike Affirmative Defenses

Although San Marcos moves to strike defendants' affirmative defenses, its motion for partial summary judgment deals entirely with its contention that statutory and common law claims for misrepresentation are not preempted by § 1144(a). Since San Marcos fails to explain why it is entitled to summary judgment on the remaining defenses, the court shall deny San Marcos' request for summary judgment.

### D. *San Marcos' Motion to Amend*

San Marcos seeks leave to file its First Amended Complaint to amend its damages (actual and attorney's fees), to "clarify and more precisely plead its allegations," and to add additional claims under ERISA and Missouri law.[13] In support of its motion, San Marcos argues that because much of the discovery in this case took place after the deadline for amending pleadings (March 29, 1991), it did not have the information it now seeks to incorporate in its petition. Defendants object to San Marcos' request to amend as untimely and inappropriate.

On May 30, 1991, this court denied San Marcos' first request to amend its Complaint to add additional parties. This request was denied because the court did not find that "extraordinary circumstances" were present to warrant such relief. Although not mentioned in its original order, another reason why the court denied San Marcos' motion was because it believed that San Marcos wished to engage in a "fishing" expedition.

■ As San Marcos aptly points out, Rule 15(a) of the Federal Rules of Civil Procedure directs a court to permit a party to amend its pleading "when justice so requires." The court sympathizes with the difficult position San Marcos was placed as a result of its late entry in this suit. Thus, to the extent that San Marcos seeks to supplement its petition so as to "clarify" its allegations, the court shall permit San Mar-

---

12. Whether the elements of a claim for equitable estoppel are present is a question of fact. *Twin City Fire Ins. v. Philadelphia Life Ins. Co.,* 795 F.2d 1417, 1431 (9th Cir.1986); *Apponi v. Sunshine Biscuits, Inc.,* 809 F.2d 1210, 1217 (6th Cir.), *cert. denied,* 484 U.S. 820, 108 S.Ct. 77, 98 L.Ed.2d 40 (1987). Because the parties disagree as to whether the elements of equitable estoppel are present, this matter will be submitted to a jury. The court, however, will decide whether the doctrine should apply in this case. The elements of equitable estoppel, as recognized by federal common law, include: 1) misstatement of a material fact; 2) party to be estopped was aware of the true facts; 3) party intended that

the misstatements be acted on or had reason to believe that the recipient of the information would rely on it; 4) the recipient of the information did not know, nor should have known, the true facts; and 5) the recipient of the information reasonably and detrimentally relied on the misstatements. *National Companies Health Benefit Plan,* 929 F.2d at 1572.

13. San Marcos wishes to add claims pursuant 29 U.S.C. § 1140 (discrimination against a plan participant or beneficiary for exercising rights under an employee benefit plan) and Mo.Rev. Stat. § 376.381 (required mental health benefits under state law).

cos to do so. Additionally, San Marcos shall be permitted to amend its actual (economic) damages and the stated sums for reasonable attorney's fees. The court agrees with San Marcos that defendants will not be prejudiced by these amendments. The court, however, will not permit San Marcos to allege new claims under ERISA and Missouri law. It is this court's belief that San Marcos had sufficient information at the outset of this proceeding to assert the claims it now seeks to add. Accordingly, the court shall direct San Marcos to revise its proposed First Amended Complaint so that it conforms with all of the rulings the court has made in this order.

### E. *Tarra Lynne Coonce's Motion to Amend*

 Tarra seeks to amend her Complaint to clarify the factual allegations contained in the causes of action and to add additional claims under ERISA and Missouri law.[14] Defendants object to plaintiff's motion as being untimely.

Pursuant to defendants' motion for partial summary judgment, this court entered summary judgment in its entirety on behalf of defendants and against Tarra. See supra discussion at B.(1)–(6). Were the court to grant Tarra's motion—namely, her request to add additional claims arising under ERISA and Missouri law—Tarra would be reinstated as a party in this action. The court, however, does not believe that the circumstances warrant such a finding. As the court noted in its disposition of San Marcos' motion to amend, the claims Tarra seeks to add involve matters that were known to her at the time she filed this action. There is no excusable reason why Tarra did not include these claims in her original petition—or before the deadline passed for amending pleadings. The court does not believe that Rule 15(a) should be used to cure careless omissions in drafting—particularly when the request to amend occurs shortly before trial. Consequently, the court shall deny Tarra's motion to amend in its entirety.

## III. CONCLUSION

In consideration of the above, it is hereby

ORDERED that defendants' Motion for Partial Summary Judgment on the Claims of Plaintiff Tarra Lynne Coonce is granted. Judgment shall be entered for defendants and against plaintiff Tarra Lynne Coonce on Counts I, II, III, IV, V, and VI. Defendants' motion discharges plaintiff Coonce as a party in this case. Plaintiff San Marcos Treatment Center is the surviving plaintiff in this case. It is further

ORDERED that plaintiff San Marcos' Motion for Partial Summary Judgment is denied. It is further

ORDERED that defendants Motion for Summary Judgment on Intervenor San Marcos is granted in part and denied in part. The court grants summary judgment on behalf of defendants and against plaintiff San Marcos on Counts I, II, III, and IV. The court denies summary judgment on Counts V and VI. It is further

ORDERED that plaintiff San Marcos' Motion for Leave to File First Amended Complaint in Intervention is granted in part and denied in part. San Marcos shall be permitted to supplement its surviving allegations and amend its prayer for actual damages and attorney's fees. San Marcos is directed to revise its First Amended Complaint so that it conforms with the rulings set forth herein. The court further directs San Marcos to resubmit its amended petition for filing within fifteen (15) days from the date of this order. It is further

ORDERED that plaintiff Tarra Lynne Coonce's Motion for Leave to File First Amended Complaint is denied.

---

**14.** Tarra seeks to add claims pursuant to 29 U.S.C. §§ 1140, 1132(c)(1) (administrator's refusal to supply requested information to a plan participant), and Mo.Rev.Stat. § 376.381.