Kent P. BARKER, Carla J. McAndrews, and Martin J. Timmons, on Behalf of Themselves and All Others Similarly Situated, Plaintiffs,

v.

CERIDIAN CORPORATION, a Delaware Corporation, Individually and as Successor in Interest to Control Data Corporation, and Control Data Systems, Inc., a Delaware Corporation, Individually and as Successor in Interest to Control Data Corporation, Defendants.

Civil No. 4–94–944.

United States District Court,
D. Minnesota,
Fourth Division.

March 26, 1996.

Terence Melling Fruth, Paul Michael Floyd, F.D. Chip Baltimore, II, Fruth & Anthony, Minneapolis, MN, Matthew B. Newman, Newman Law Office, Edina, MN, for plaintiffs Kent P. Barker, Carla J. McAndrews, Martin J. Timmons.

Madge S. Thorsen, Richard Alvin Kaplan, Elizabeth A. Di Cola, Popham Haik Schnobrich & Kaufman, Minneapolis, MN, for defendant Ceridian Corporation.

Thomas S. Fraser, Cynthia A. Jokela, Fredrikson & Byron, Minneapolis, MN, for defendant Control Data Systems, Inc.

## ORDER

DOTY, District Judge.

This matter is before the court on defendants' motion for summary judgment and on plaintiffs' motion for partial summary judgment. Based on a review of the file, record and proceedings herein, and for the reasons stated, the court grants defendants' motion for summary judgment and denies plaintiffs' motion for summary judgment.

## BACKGROUND

Plaintiffs Kent P. Barker ("Barker"), Carla J. McAndrews ("McAndrews") and Martin J. Timmons ("Timmons") are representatives of a class of disabled employees of defendant Ceridian Corporation, f/k/a Control Data Corporation ("Control Data"). By order dated October 20, 1995, the court certified a class defined as followed:

> All employees of Ceridian Corporation, formerly known as Control Data Corporation, who were disabled prior to January 1, 1991 and who were having 100% of their health, life and dental insurance premiums paid by Ceridian on or before December 31, 1993, excluding those individuals who are members of the class which was certified in the class action lawsuit venued in the United States District Court for the Western District of Oklahoma entitled *Leo W. Chiles, et. al. v. Ceridian Corporation, et. al.,* (Court File No. Civ. 93–1715–D).

The court also certified a subclass of disabled employees, represented by Timmons, defined as "All employees of Ceridian Corporation, formerly known as Control Data Corporation, who were disabled on or after January 1, 1989 and prior to January 1, 1991." Each class member is disabled as that term is defined in the Long–Term Disability Plan of Control Data and receives a disability benefit of 60 percent of his or her previous full-time monthly compensation. Each class member was disabled prior to January 1, 1991, and up until December 31, 1993, Control Data paid each class members' premiums for their life, health and dental benefits in which they were enrolled at the time of disability. Effective January 1, 1994, Control Data stopped paying the full premiums for these disabled employees, instead the employees were required to pay part of the premiums if they wished to continue participation in their health, life and dental plans. Because of the financial hardships this action imposed, many disabled employees discontinued their participation in these welfare plans.

Plaintiffs allege that the decision of Control Data to stop paying such premiums violates the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et. seq.* Specifically, plaintiffs contend that their right to received this benefit vested when they attained Long–Term Disability Status or, for employees disabled between 1989 and 1991, Medical Leave Status and that Control Data did not effectively reserve the right to terminate its agreement to pay such premiums. Plaintiffs' complaint has ten counts. At oral argument, plaintiffs voluntarily moved to dismiss Counts IV (breach of contract under state law) and X (improper amendment). These counts shall be dismissed. Defendants move for summary judgment on all remaining counts.

## DISCUSSION

The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard mirrors the standard for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), which requires the trial court to enter judgment as a matter of law if there can be but one reasonable conclusion as to the verdict. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* at 249, 106 S.Ct. at 2510.

On a motion for summary judgment, the court views the evidence in favor of the nonmoving party and gives that party the benefit of all justifiable inferences that can be drawn in its favor. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, cannot rest

upon mere denials or allegations in the pleadings. Nor may the nonmoving party simply argue facts supporting its claim will be developed later or at trial. Rather the nonmoving party must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If reasonable minds could differ as to the import of the evidence, judgment as a matter of law should not be granted. *See Anderson,* 477 U.S. at 250–51, 106 S.Ct. at 2511–12. If a plaintiff fails to support an essential element of a claim, however, summary judgment must issue because a complete failure of proof regarding an essential element renders all other facts immaterial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53. With this standard at hand, the court addresses the motion of Control Data.

### A. 29 U.S.C. § 1132(a)(1)(B)

Plaintiffs seek to enforce their rights to company paid premiums for their health, life and dental benefits. Specifically, counts I and II seek to enforce the terms of Control Data's "Disability Program," which contains as its only benefit the "promise to pay premiums" relating to a disabled employee's other benefit plans enrollment. Plaintiffs contend that the "Disability Program" is a formal welfare benefit plan under ERISA. Alternatively, plaintiffs seek to enforce the terms of the "Disability Program" to the extent that it is an informal welfare benefit plan covered under ERISA.

■ The court rejects the contention that the "Disability Program," as defined by plaintiffs, is an informal plan under ERISA. Accepting plaintiffs' position, the "Disability Program" is contained only in SPDs distributed by Control Data. These documents, however, meet ERISA standards for SPDs. As SPDs are part of ERISA plan documents, they cannot constitute informal plans. Summary judgment on plaintiffs' alternative theory in Count II is granted.

Tied to the distinction between informal and formal plans, however, is a dispute over the source of Control Data's "promise to pay premiums." Plaintiffs argue that the "Disability Program," and its "promise to pay

premiums" is separate and distinct from any underlying health, life or dental plan. Plaintiffs maintain that the source of the "promise to pay premiums" or "Disability Program" is the 1983 and 1986 Disability Income Protection SPDs as well as the disability section of the 1989 Employee Benefits Manual. The distinction is crucial to plaintiffs' theory that the right to amend or terminate each of the welfare plans was not intended to reserve the right to amend or terminate the "promise to pay premiums" plan. Control Data contends that the source of this benefit is the underlying welfare benefit plans covering an employees' health, life and dental benefits. Control Data asserts that an agreement to pay benefit premiums cannot rationally be separated from the underlying benefit plans. As discussed *infra,* defendant's position is supported by the language of the formal plan documents for the Health Care Plan and Dental Assistance Plan. The court begins its discussion, however, with the assumption that the "promise to pay premiums" is a separate and distinct plan.

■ The issue before the court is whether plaintiffs' right to receive company payment of their premiums for other welfare benefits vested when they qualified for long-term disability benefits. The plans at issue are welfare benefit plans. As such, ERISA's mandatory vesting requirements do not apply. 29 U.S.C. § 1051(1). A determination of the benefits provided, whether they vest or whether they are terminable or amendable, is simply a matter of contract interpretation. *Jensen v. SIPCO, Inc.,* 38 F.3d 945, 949 (8th Cir.1994) (citing *Howe v. Varity Corp.,* 896 F.2d 1107, 1109 (8th Cir.1990), *cert. denied,* —— U.S. ——, 115 S.Ct. 1428, 131 L.Ed.2d 310 (1995)).

■ ERISA requires that "[e]very employee benefit plan … be established and maintained pursuant to a written plan document." 29 U.S.C. § 1102(a)(1). Summary plan descriptions ("SPDs"), also required by ERISA, explain the benefits of a particular welfare benefit plan and must be distributed to employees. 29 U.S.C. § 1022. SPDs are part of the ERISA plan documents. *Jensen,* 38 F.3d at 949. In interpreting the plan

documents, the court applies the law of trusts. *Jensen,* 38 F.3d at 950 ("The terms of trusts created by written instruments are 'determined by the provisions of the instrument as interpreted in light of all the circumstances and such other evidence of the intention of the settlor with respect to the trust as is not inadmissible.'") (citing *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 112, 109 S.Ct. 948, 955, 103 L.Ed.2d 80 (1989)). Vesting of welfare benefits is not presumed. Rather, the plan documents must show a specific expression of the employer's intent to be bound. *Anderson v. John Morrell & Co.,* 830 F.2d 872, 877 (8th Cir.1987); *see also Wise v. El Paso Natural Gas Co.,* 986 F.2d 929, 937 (5th Cir.) (holding that the intent to be bound must be "clear and express"), *cert. denied,* — U.S. ——, 114 S.Ct. 196, 126 L.Ed.2d 154 (1993). The burden is on the beneficiary seeking benefits to prove a fixed entitlement. *Anderson v. Alpha Portland Indus., Inc.,* 836 F.2d 1512, 1516–17 (8th Cir.1988).

■ The court begins with the language of the plan documents. Plaintiffs argue that language in the 1983 and 1986 Disability Income Protection SPDs and in the disability section of the 1989 Employees Benefit Manual constitutes a promise that company paid premiums for health, life and dental benefit plans vested at the time of an employees' disability. Control Data's plan history places plaintiffs' argument in context. Beginning in the late 1970s, Control Data provided a number of employee benefit plans to its employees. Five plans are relevant for purposes of this action: the Health Care Plan, Flexible Health Care Plan, Dental Assistance Plan, Life Insurance Plan and Long–Term Disability Plan. Each has a formal plan document. These plans, with the exception of the Flexible Health Care Plan, which was not adopted until 1988, were summarized in summary plan descriptions ("SPDs"). From 1978 through 1989, the company published and distributed separate summary plan descriptions ("SPDs") for each plan, with the exception of a SPD entitled "Disability Income Protection Plan SPD." This document did not summarize a particular formal plan, rather it summarized the "disability plans" of Control Data including Sick Leave, Short–Term Disability and Long–Term Disability.

The *Disability Income Protection SPDs* issued during this period provided that:

> While on Long–Term Disability Status the Company will pay the company-sponsored benefits (medical, life, and dental) for which you and your dependents were enrolled before your disability began. The company will continue paying all premiums until you and your dependents are no longer eligible for the plans.

1985 Disability Income Protection SPD, pg. 7, attached as Exhibit B to the affidavit of Madge S. Thorsen, Docket No. 20; 1986 Disability Income Protection SPD, pg. 6, attached as Exhibit P to the affidavit of Madge S. Thorsen, Docket No. 20 (containing similar language). During this period, each SPD for the health, life and dental plans also referenced the company's promise to pay a disabled employee's benefit premiums. The Disability Income Protection SPDs also stated:

> Control Data expects to continue the Long–Term Disability Plan indefinitely, but must reserve the right to change or discontinue it if it becomes necessary. This would be done only after careful consideration.

1985 Disability Income Protection SPD, pg. 21, attached as Exhibit B to the affidavit of Madge S. Thorsen, Docket No. 20; 1986 Disability Income Protection SPD, pg. 20, attached as Exhibit P to the affidavit of Madge S. Thorsen, Docket No. 20. According to plaintiffs, this reservation of rights clause is limited to the Long–Term Disability Plan. It does not reserve the right to change the company's promise to pay premiums for company sponsored benefits contained in the Disability Income Protection SPD.

In 1989, Control Data changed the format of its SPDs. That year, Control Data published and distributed one booklet, entitled "Employee Benefits Manual," instead of separate SPDs. This booklet purportedly summarized a number of formal plans including the Health Care Plan, Flexible Health Care Plan, Dental Assistance Plan, Group Life Insurance, Business Travel Accident Insur-

ance, Short-term Disability Plan, Long-term Disability Plan, Personal Investment Plan, Pension Plan, Dependent Child Care Plan and Premium Conversion Plan. *See* 1989 Employee Benefits Manual, pg. 166, attached as Exhibit E to the affidavit of Paul M. Floyd, Docket No. 17. The 1989 Manual provides, under the heading "Medical leave status," that:

> During the first 30 calendar days of disability, you continue to pay the monthly contributions for your other Control Data benefits, such as health, dental and life insurance.
>
> After 30 days of disability, your employment status may change to medical leave status. Medical information used to determine your eligibility for Short- and Long–Term Disability will be used to determine your eligibility for medical leave status.
>
> There are three types of medical leave status:
>
> [Short–Term Disability Status, Long–Term Disability Status and Rehabilitation Status]
>
> While you are on medical leave status and earning less than 100 percent of your normal income, Control Data pays your monthly contributions for your benefits until:
>
> You are no longer considered disabled.
>
> You or your dependents become ineligible for these benefits.

1989 Employee Benefits Manual, pg. 114, attached as Exhibit E to the affidavit of Paul M. Floyd, Docket No. 17.

■ Relying on the above-quoted language, plaintiffs assert a vested interest in company paid premiums. The court disagrees. The language cited by plaintiffs at most states a present promise to pay these premiums for a specific period of time. Nothing in the language of the SPDs shows a specific intent to be unconditionally bound into the future. Nor can this language reasonably be read as expressing a promise to never change the benefits. The language indicates what the plan provided, not whether the provisions of the plan would be provided in perpetuity. Further, although the language read in isolation as plaintiffs' suggests

does not contain a termination or amendment clause, the absence of such a clause does not automatically vest a promised benefit. The clear intent to provide a vested benefit is crucial. Unless plan documents provide otherwise, an employer may amend or terminate welfare benefits without the need to reserve such a right. As the plans lack a specific expression of an intent to provide a vested right in the company paid premium, Control Data's termination of this benefit does not violate ERISA. Thus, the court grants Control Data's motion for summary judgment on Count I.

■ The court also notes that a reservation of rights provision which reflects an employer's right to change or terminate a welfare plan is inconsistent with, and can defeat, a claim for vested benefits. *Jensen v. SIPCO, Inc.*, 38 F.3d 945, 950 (8th Cir.1994). The formal plan documents for the Health Care Plan and the Dental Assistance Plan contain a section on the continuation of benefits if a participant ceases active employment due to disability. The Health Care Plan provides that:

> If the Participant ceases active employment with the Employer by reason of an approved disability or medical leave or short- or long-term disability, his coverage hereunder shall continue for the period of such leave or disability, with the entire cost of such coverage being borne by the Employer.

Health Care Plan, Article III, § 3.03(d), pg. 12–13, attached to the affidavit of Ann M. Curme as Exhibit A, Docket No. 29; *see also* Dental Assistance Plan, Article III, § 3.03(c), pg. 8, attached to the affidavit of Ann M. Curme as Exhibit B, Docket No. 29 (same language). Each Health Care Plan and the Dental Assistance Plan also contains a reservation of rights clause that states:

> It is the expectation of each Employer that it will continue the Plan indefinitely, but each Employer reserves the right at any time to terminate the Plan as to its Employees.

\* \* \* \* \* \*

The right to amend the Plan at any time to any extent that it may deem advisable, is reserved to Control Data Corporation.

Health Care Plan, Article IX, §§ 9.01 and 9.03, pg. 30–31, attached to the affidavit of Ann M. Curme as Exhibit A, Docket No. 29; *see also* Dental Assistance Plan, Article VIII, §§ 8.01 and 8.03, pg. 29–30, attached to the affidavit of Ann M. Curme as Exhibit B, Docket No. 29. The SPDs for these plans also describe the company paid premium as well as the reservation of rights language. The clear and unequivocal termination and amendment clauses contained in the plan documents defeat plaintiffs' claim for a vested premium payment for disabled employees who participate in the Health Care Plan and the Dental Assistance Plan.

Even assuming that the language cited by plaintiffs was an ambiguous expression of an intent to provide vested company paid premiums to disabled employees, the resort to extrinsic evidence does not aid plaintiffs. Every welfare plan document submitted to the court contains a statement reflecting Control Data's right to amend or terminate the welfare benefits. Even the receipt of the benefit at issue is contingent on the existence of the Long–Term Disability Plan, a plan which could be terminated by the company. The contingent nature of the benefit is inconsistent with an intent to provide a vested benefit. Moreover, plaintiffs have come forward with no evidence that anyone at Control Data told any employee that the company paid premium was immune from change. The only extrinsic evidence in the record reflects an intent by Control Data to reserve its statutory right to change all aspects of its welfare plans.

■ Count III alleges an alternative claim of breach of a unilateral contract under federal common law. Plaintiffs claim that Control Data made an offer to its employees that it would pay their welfare premiums in the event of disability, the offer was accepted and supported by consideration in the form of the employees' continued employment until disability. Even if such a contract does not run afoul of ERISA's prohibition against informal amendments, the court finds plaintiffs' argument to be without merit. *See Anderson v. John Morrell & Co.*, 830 F.2d 872 (8th Cir.1987). Defendant's motion for summary judgment on Count III is granted.

**B. Promissory Estoppel** [1]

■ In Count V, plaintiffs state a claim of promissory estoppel under federal common law. Plaintiffs may assert a claim of estoppel where the terms of a plan are ambiguous and the communications which form the basis of the estoppel claim constitute an interpretation of that ambiguity. *Slice v. Sons of Norway*, 34 F.3d 630, 634 (8th Cir.1994). Ambiguous plan provisions are essential to a claim based on federal common law estoppel. The court has already held that Control Data's "promise to pay premiums" is not ambiguous as to vesting. Even if the plan terms were ambiguous as to vesting, there is no evidence that defendants made any oral interpretations concerning the plan provisions. Plaintiffs cannot recover the benefits they seek on a theory of federal common law estoppel. Accordingly, summary judgment on Count V is granted.

---

1. Plaintiffs moved the court to defer a decision on defendant's motion for summary judgment on Counts V–IX until the Supreme Court issued a decision in *Howe v. Varity Corp.*, 36 F.3d 746 (8th Cir.1994), *cert. granted* — U.S. ——, 115 S.Ct. 1792, 131 L.Ed.2d 720 (1995). The Supreme Court recently affirmed the Eighth Circuit's decision in *Howe*. *Varity Corp. v. Howe*, — U.S. ——, 116 S.Ct. 1065, — L.Ed.2d — (1996). In a letter to the court dated March 21, 1996, plaintiffs "submit that [the Supreme Court's holding] precludes summary judgment on their claim for breach of fiduciary duty." The basis of this belief, however, is not clear. Since the Eighth Circuit's decision in *Howe*, it has been the law in this circuit that beneficiaries may state a breach of fiduciary duty claim. The affirmance of that holding does not *per se* preclude summary judgment on plaintiffs' claim. Further, neither the Supreme Court nor the Eighth Circuit reached plaintiffs' alternative claims of promissory estoppel or interference with protected rights. *Id.* at 756 n. 5. Thus, the recent decision in *Howe* does not impact the court's consideration of these claims. Finally, although plaintiffs' have not conducted discovery, they have failed to submit an affidavit pursuant to Fed.R.Civ.P. 56(f) stating what facts have yet to be developed which support their opposition to Control Data's motion. Accordingly, the court will address the merits of Counts V–IX.

Count VI alleges an equitable estoppel claim under state law. As such, it is preempted. *Anderson v. John Morrell & Co.,* 830 F.2d 872 (8th Cir.1987).

### C. Breach of Fiduciary Duty

 Count VII alleges that Control Data breached its fiduciary duty in violation of 29 U.S.C. §§ 1104 and 1132(a)(3)(B). Count VIII states a claim for breach of fiduciary duty owed to members of the subclass of disabled employees. Plaintiffs claim that Control Data, a fiduciary under 29 U.S.C. § 1002(21), breached its duty:

> by including misrepresentations or omitting material information in communications with participants in connection with business decisions, failure to act or pay in accordance with plan documents, failure to effectuate proper disclosure of terms of plan in the summary plan descriptions, and favoring one group of plan participants over another.

Class Action Complaint, ¶ 121, pg. 42, Docket No. 1. Members of the subclass allege that Control Data breached its fiduciary duty by "making material and substantial changes to the Disability Program, including, but not limited to, the purported reservation of rights clause, without adequately informing the Subclass members of the existence or the effect of the change." Class Action Complaint, ¶ 125, pg. 43, Docket No. 1.

 ERISA provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interests of the participants and beneficiaries" of a plan. 29 U.S.C. § 1104(a)(1). Control Data did not act as a fiduciary, however, when it exercised its right to amend or terminate the welfare benefits at issue. *Curtiss–Wright Corp. v. Schoonejongen,* —— U.S. ——, ——, 115 S.Ct. 1223, 1228, 131 L.Ed.2d 94 (1995) (citing *Adams v. Avondale Indus., Inc.,* 905 F.2d 943, 947 (6th Cir.1990)). Moreover, a failure to disclose that welfare benefits do not vest is not a breach of a fiduciary's duty under ERISA. *Jensen,* 38 F.3d at 953. Finally, plaintiffs have failed to come forward with any material misrepresentations in support of its breach of fiduciary duty claim.

Summary judgment in favor of Control Data is warranted on Counts VII and VIII.

### D. Interference with Protected Rights

 Count IX alleges defendant interfered with plaintiffs' protected rights in violation of 29 U.S.C. § 1140. Section 510 of ERISA provides that "[i]t shall be unlawful for any person to ... discriminate against a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. The action that plaintiffs challenge is Control Data's decision to require disabled employees to pay their own premiums if they participate in company sponsored welfare plans. As Control Data may alter the terms of its welfare benefit packages, the amendment of these plans may not support a claim under section 510. Because plaintiffs' benefits did not vest, the plan modification at issue does not constitute a discriminatory act forbidden by section 510. Accordingly, the court grants defendant's motion for summary judgment on Count IX.

### CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1. Defendants' motion for summary judgment is granted; and

2. Plaintiffs' motion for partial summary judgment is denied.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**